836 F.2d 1022
 127 L.R.R.M. (BNA) 2285, 108 Lab.Cas. P 10,290
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MERCY-MEMORIAL HOSPITAL CORPORATION, Respondent,
Hospital Employees' Division of Local 79, Service Employees
International Union, Intervenor.
 No. 87-5145.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 8, 1987.
Decided Jan. 12, 1988.
Rehearing and Rehearing En Banc Denied March 28, 1988.
 
 Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., Peter Winkler (argued), Dennis Walsh, Bernard Gottfried, Director, Region 7, NLRB, Detroit, Mich., for petitioner.
 David E. Kempner (argued), Thomas H. Schwarze, Keller, Thoma, Schwarze, Schwarze, DuBay and Katz, Detroit, Mich., for respondent.
 Before MARTIN, MILBURN and NORRIS, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The National Labor Relations Board seeks enforcement of its decision, 282 N.L.R.B. No. 5 (Oct. 27, 1986), finding Mercy-Memorial Hospital in violation of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(5), by refusing to bargain with Hospital Employees' Division of Local 79, Service Employees International Union.
 
 
 2
 On January 20, 1983, a petition to decertify the Union was filed. The bargaining unit had recently been expanded, and most employees in the unit were not union members. Pursuant to a stipulation for certification upon consent election, a Board election was set for March 9, 1983. On February 16, 1983, the Union sent a letter to all employees eligible to vote in the decertification election. The letter urged employees to vote for the Union. The letter also contained the following sentence: "If any of your co-workers are assisting the Hospital management, we urge you to notify our office immediately."[1] The election results showed 119 for the Union and 95 against, with 7 challenged ballots.
 
 
 3
 On March 16, 1983, the Hospital filed 3 objections to the election. The third of these objections alleged that the Union's letter had interfered with employee free choice by directing employees to report the pro-management activities of their co-workers during the election campaign.
 
 
 4
 On April 25, 1983, the Hospital's objections were heard. On May 24, 1983, the hearing officer issued a report containing findings of facts and recommendations. The hearing officer allowed the Hospital to withdraw its second objection, and she recommended that the Board overrule the Hospital's first and third objections. The Hospital filed exception to the hearing officer's report, contesting only the recommendation to overrule its third objection. On March 6, 1986, the Hospital moved for summary judgment on its exception. In its April 21, 1986 decision, the Board denied the Hospital's motion for summary judgment, adopted the hearing officer's findings and recommendations, and certified the Union as the exclusive representative of the Hospital's employees. In adopting the hearing officer's recommendation to overrule the Hospital's third objection, the Board emphasized that most members of the bargaining unit were not union members at the time the letter was sent and that the Union is entitled to utilize its membership to lawfully obtain information helpful to its campaign. The Board further noted that the context of the request was a letter which "was clearly a campaign document aimed at bolstering the Union's support" and that the request for employees' help "d[id] not contain any threat or hint of unlawful means." Finally, the Board stressed that a union is in a much weaker position to exercise coercive influence over employees than is an employer.
 
 
 5
 The Hospital refused to bargain with the Union, contending that the Union was improperly certified. On June 9, 1986, the General Counsel issued a complaint alleging that the Hospital's refusal to bargain violated the Act. On October 27, 1986, the Board issued its decision and order. The Board denied the Hospital's motion for reconsideration of the Board's decision and certification of representative, found that all issues raised by the Hospital in the unfair labor practice proceeding were or could have been litigated in the representation proceeding, found that the Hospital had not offered to adduce any newly discovered or previously unavailable evidence or alleged any special circumstances that would require the Board to re-examine the decision it made in the representation proceeding, granted the General Counsel's motion for summary judgment, and ordered the Hospital to bargain with the Union.
 
 
 6
 The Hospital argues that it is under no duty to bargain with the Union because the Union's letter destroyed the requisite laboratory conditions for the decertification election and restrained eligible voters in violation of 29 U.S.C. Sec. 158(b)(1)(A). The Hospital, characterizing the Union's letter as a veiled threat to discipline those union members disloyal to its interests, argues that the letter unlawfully discouraged employees from engaging in organizational activities protected under the National Labor Relations Act. The Hospital further argues that an objective standard should be used to determine whether a union's conduct had a tendency to influence the outcome of the election. Therefore, the Hospital asserts that it is of no consequence that it presented no evidence that employees actually felt coerced into supporting the Union. Instead, the Hospital claims that it only need show that the Union's actions had a reasonable tendency to interfere with the employees' free choice.
 
 
 7
 The Board argues that its decision to overrule the Hospital's third objection is not reversible as unsupported by the record. The Board argues that the request for information contained no threat. Moreover, the Board argues that, because it is improbable that the one sentence interfered with the free exercise of employee choice, the Hospital cannot prevail without presenting evidence that employees actually felt threatened by the letter.
 
 
 8
 Neither a union nor an employer may threaten to retaliate against workers for their participation in activities protected by the Act. In this case, however, it is far from apparent that the challenged sentence constituted any type of threat. Under such circumstances, we follow the reasoning of Kusan Mfg. Co. v. N.L.R.B., 749 F.2d 362 (6th Cir.1984). Kusan, recognizing that there is a significant disparity between the coercive powers of an employer of unorganized workers and those of a union attempting to organize those workers, held that an employer cannot successfully challenge a representation election on the basis of pre-election polling by a union without producing evidence that the polling was in fact coercive. As I wrote for the panel in Kusan:
 
 
 9
 Although pre-election polling by the union is not inherently coercive, an employer may successfully challenge a representation election if he shows that pre-election polling by the union in fact was coercive and in fact influenced the result of the election.
 
 
 10
 Id. at 365 (emphasis in original).
 
 
 11
 We hold, therefore, that where an employer challenges a representative election on the basis of a union's letter that, at most, is only arguably a veiled threat, the employer cannot succeed without demonstrating that the letter was in fact coercive. Because it offered no evidence that the letter was in fact coercive, the hospital cannot successfully challenge the election on the basis of the Union's February 16, 1983 letter. We find the Board's decision to be supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 12
 The Board's decision is enforced.
 
 
 13
 ALAN E. NORRIS, Circuit Judge, dissenting.
 
 
 14
 The majority's reasoning would be more persuasive were we reviewing a decision of the Board predicated upon the presence or lack of evidence of actual coercion. The NLRB hearing officer's report recognizes that "it is apparent that the Union's request can be viewed as a broad request to report employee activities some of which are protected by the Act," ventures that "it is also apparent that the Union ... lacks any control over the employment relationship of employees, which might otherwise render such a request coercive," and notes that the employer "presented no ... showing that the Union's request had a tendency to interfere with employee free choice." However, the Board's majority ignored any factual predicate for its decision. Instead, in essence, it held as a matter of law that the language utilized by the union could never be deemed a threat.
 
 
 15
 In his dissent from the NLRB majority's decision, Chairman Donald L. Dotson pointed out the obligation of the Board to treat a union's threat of retaliation as seriously as one from an employer. I find his characterization of the letter's language more realistic than that of the majority of the Board:
 
 
 16
 [A] letter exhorting employees to engage in surveillance of their coworkers cannot be dismissed as a "campaign document," nor can it be successfully analogized to an employer's lawful request--uncommunicated to its employees--of its supervisors to apprise management of any information they receive concerning employees' union sentiments.
 
 
 17
 ....
 
 
 18
 While the Union allegedly made this request because it sought assistance in determining whether the decertification petition was tainted by supervisory participation, the letter which the employees received did not convey this limited message, as the hearing officer herself found. Rather, in the context of the decertification election conducted here, the union letter constituted a veiled threat to discipline those members disloyal to its interests. Furthermore, the urgency of this matter, as set out in the letter, could not fail to underscore in the minds of union members that they risked adverse consequences by failing to support the Union....
 
 
 19
 Accordingly, I would deny enforcement of the Board's decision.
 
 
 
 [1]
 The letter, in its entirety, reads:
 TO: MONROE MERCY HOSPITAL EMPLOYEES,
 Members of Local 79, SEIU, AFL-CIO
 Dear Members:
 Your Union, along with your contract bargaining committee, was faced with a very important decision. Several weeks ago, Nolan Smallwood (Maintenance), filed a petition requesting that another Union election be conducted. By coincidence the petition was filed right after Memorial Hospital joined Mercy Hospital and during contract negotiations.
 We had to decide whether to fight having another Union election or agree to a second Union vote and get back to the bargaining table. Since fighting the petition could be a time consuming event, we agreed to have another Union vote. Our decision was based on you and your co-workers best interest and need for security. Currently the election details are being worked out and the election should be scheduled for March 9th.
 For the next several weeks management will be meeting with you and sending you literature. The purpose of management's activities will be directed at convincing you to get rid of the Union. We ask you to consider what management is doing and why. Ask management what they will guarantee you, if you have no Union? Ask management if they can reduce your wages and benefits, if there is no Union? Ask management if they can lay you off or subcontract your jobs to outsiders if there is no contract prohibiting same? Then ask yourself why management would try to strip you of your right for "Union Representation."
 As the election date grows nearer, it is our opinion that the Hospital management's effort to confuse and deceive your co-workers will increase. We urge that any questions you have be directed to one of the contract negotiating committee members or your Union Business Representative, Mr. Victor Andrews. If any of your co-workers are assisting the Hospital management, we urge you to notify our office immediately.
 In several weeks you will be confronted with a decision that will have a great impact on your future. After evaluating the facts, there is but one best decision you can make--UNION.
 RWC/sj/DV
 opeiu 10 afl-cio
 Unitedly,
 RICHARD W. CORDTZ,
 President
 VICTOR ANDREWS,
 Business Representative,
 MONROE HOSPITAL
 NEGOTIATING COMMITTEE
 THERE IS ONLY ONE HOSPITAL
 IN MONROE and IN UNITY THERE IS STRENGTH